UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

v.

KHUM SON, also known as Son Khum

CRIMINAL ACTION

NO. 16-75-JWD-RLB

### RULING AND ORDER ON MOTIONS IN LIMINE

This matter comes before the Court on (1) the *Motion in Limine to Exclude Other Crimes, Statements, Wrongs, or Bad Acts* (Doc. 25) filed by Defendant Khum Son, also known as Son Khum ("Defendant"), and (2) the *Motion in Limine to Preclude Defendant from Referring to Post-Indictment Sex Offender Registration During Trial* (Doc. 30) filed by the United States of America (the "Government").  Both motions are opposed. (*See* Docs. 19, 32.)[1]  Oral argument on both motions was heard on January 5, 2017.  The Court has carefully considered the law, the facts in the record, and the arguments of the parties and finds that both motions should be denied.

**I.     Relevant Background**

The Indictment alleges that, from in or about January of 2016 through on or about April 23, 2016, the Defendant, who was convicted of a sexual offense in California and who, after said conviction, traveled in interstate commerce, knowingly failed to register and update a registration where in resided in Louisiana, as required by the Sex Offender Registration and Notification Act. (Doc. 1.)  The Indictment claims this is a violation of 18 U.S.C. § 2250(a).

According to the Fifth Circuit pattern instructions, this crime requires the government to prove the following beyond a reasonable doubt:

---

[1] Additionally, since these motions and oppositions were filed, the Government has also filed a *Trial Brief in Regards to the Admissibility of Prior Inconsistent Statements in Grand Jury and Detention Hearing Transcripts*. (Doc. 36.)  As its name suggests, this brief does not deal with the issues raised in the instant motions.

1

>*First*: That the defendant was required to register under the Sex Offender Registration and Notification Act, as charged;
>
>*Second*: That the defendant traveled in interstate commerce; and
>
>*Third*: That the defendant knowingly failed to register and keep a current registration as required by the Sex Offender Registration and Notification Act.

Fifth Circuit Pattern Jury Instructions (Criminal) § 2.83 (2015). The pattern jury charges further provide:

>These three elements must be proven to have occurred in sequence. . . .
>
>The government must prove beyond a reasonable doubt that the defendant knew he had to register and that he intentionally did not do so, but the government does not have to prove that the defendant knew he was violating federal law.

*Id.*

Lastly, the Defendant has represented that he intends to pursue an affirmative defense listed in the statute. Specifically, 18 U.S.C. § 2250(c) provides:

>In a prosecution for a violation under subsection (a) or (b), it is an affirmative defense that—
>
>>(1) uncontrollable circumstances prevented the individual from complying;
>>
>>(2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and
>>
>>(3) the individual complied as soon as such circumstances ceased to exist.

## II. The Defendant's Motion in Limine to Exclude Other Crimes, Statements, Wrongs, or Bad Acts (Doc. 25)

### A. The Parties' Arguments

The Government seeks to introduce certain evidence under Federal Rule of Evidence 404(b) to prove knowledge, intent, and absence of mistake. The Government's proposed evidence falls into three main categories. First, the Government wants to use documents from a

California criminal proceeding in which the Defendant pled guilty to and was sentenced for failure to register as a sex offender under California state law. (*See* U.S. Exs. 1—5.)

Second, the Government asks to introduce documents from California showing that the Defendant updated yearly his registration requirements. (*See* U.S. Ex. 6.) These include documents that list registration requirements, one of which is: "If I move outside of California, I am required by federal law to register in the new state within three (3) working days." The Defendant initialed by this requirement on each of the documents. These updates are also signed by the Defendant beneath a paragraph saying that he read and understood the requirements. One update also includes a signature by the translator of the document.

And third, U.S. Ex. 7 is a plea hearing document from Defendant's 2001 conviction in California. This document reflects that the Defendant pled guilty to violating Cal. Penal Code § 288 (Lewd Act Upon a Child and False Imprisonment).

The Defendant argues this evidence has minimal probative value and that, even if there were probative value, it would be substantially outweighed by the danger of unfair prejudice (*i.e.*, convicting the Defendant for the previously committed crime or for being a sex offender rather than the crime at issue).

### B. Law Governing Rule 404(b) Evidence

#### 1. The Standard Regarding Rule 404(b) Evidence Generally

Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

In *United States v. Beechum*, the Fifth Circuit "outlined a two-step test to determine the admissibility of evidence of a defendant's prior wrongful acts." *United States v. Cheramie*, 51

3

F.3d 538, 541 (5th Cir. 1995) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc)).  "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *Cheramie*, 51 F.3d at 541 (citing *Beechum*, 582 F.2d at 911).  In *United States v. Shaw*, 701 F.2d 367 (5th Cir. 1983), the Fifth Circuit explained:

> Rule 404 is a rule of inclusion, which admits evidence of other acts relevant to a trial issue except where such evidence tends to prove only criminal disposition. The rule is exclusionary only as to evidence admitted to establish bad character as such; it very broadly recognizes admissibility of prior crimes for other purposes.

*Id.* at 386 (citations omitted)

### 2.  First *Beechum* Element

In *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), the issue was "whether the district court must itself make a preliminary finding that the Government has proved the 'other act' [referenced in 404(b)] by a preponderance of the evidence before it submits the evidence to the jury," *id.* 485 U.S. at 682, 108 S. Ct. at 1497, and the Supreme Court found that "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act," *id.*, 485 U.S. at 685, 108 S. Ct. at 1499.  In its analysis, the Supreme Court stated:

> Federal Rule of Evidence 404(b)—which applies in both civil and criminal cases—generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge. **Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.**

*Id.*, 485 U.S. at 685, 108 S. Ct. at 1499 (emphasis added).

4

In *Beechum*, the Fifth Circuit discussed the first prong of its analysis as follows:

> The test for relevancy under the first step is identical to the one we have already encountered. The standards are established by rule 401, which deems evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged. In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, "a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv. L. Rev. 954, 955 (1933). Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed.
>
> **Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.** See Weiss v. United States, 122 F.2d 675, 683 (5th Cir.), Cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941); 2 Wigmore, Evidence s 302 (3d ed. 1940).

*Beechum*, 582 F.2d at 911–12 (emphasis added).

### 3. Second Element – Rule 403

"[If] the evidence is relevant for at least one of those permissible purposes [listed in Rule 404(b)], [the Court must] then determine whether, consistent with Rule 403, the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice" *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (quoting *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)).  As *Beechum* explains:

> The legislative history indicates that Congress intended the admissibility of extrinsic offense evidence to be determined by the same standards as any other evidence, once the preliminary determination that the extrinsic offense is relevant to an issue other than the defendant's character has been made. Indeed, the Senate

5

Committee Report evidences an intent carefully to delimit the trial judge's discretion to exclude extrinsic offense evidence. It states as follows:

> (T)he use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.

S. Rep. No. 93-1277, 93rd Cong., 2d Sess. 24-25, Reprinted in (1974) U.S. Code Cong. & Admin. News 1974, pp. 7051, 7071.

*Beechum*, 582 F.2d at 910 n. 13.

This Court has also provided guidance on the second element of the *Beechum* test. Specifically, this Court has stated:

> If relevant, 404(b) evidence is limited only by whatever strictures the rules themselves otherwise provide. Thus, at this stage, "the trial judge may exclude [relevant evidence of extrinsic acts] only on the basis of those considerations set forth in Rule 403, *i.e.,* prejudice, confusion or waste of time." [*Beechum*, 582 F.2d at 911.]
>
> "In weighing the probative value and unfair prejudice, this court must make a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.' Probative value 'must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference.' " [*United States v. Pruett*, 681 F.3d 232, 245 (5th Cir.2012), quoting *United States v. Cockrell*, 587 F.3d 674, 678–79 (quoting *Beechum*, 582 F.2d at 914).] Other factors to be considered include " 'the overall similarity of the extrinsic and charged offenses, and the amount of time that separates the extrinsic and charged offenses' as well as any limiting instructions." [*Id*., quoting *Cockrell*, 587 F.3d at 679 (quoting *United States v. Richards*, 204 F.3d 177, 199–201 (5th Cir.2000)).]
>
> However . . . the Fifth Circuit has also held that "[o]ne of the dangers inherent in the admission of 'other acts' evidence is that the jury might convict the defendant 'not for the offense charged but for the extrinsic offense.' " [*United States v. Ridlehuber*, 11 F.3d 516, 521, quoting *Beechum*, 582 F.2d at 914.] This danger is "particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." [*Id*., quoting *Beechum*,

6

> 582 F.2d at 914.] To guard against this danger, Rule 404(b) excludes extrinsic offense evidence when it is relevant solely to the issue of the defendant's character. Even if the extrinsic act evidence is probative for "other purposes" recognized by Rule 404(b), such as showing motive or intent, the probative value of the evidence must be weighed against its prejudicial impact. [*Id.*]

*United States v. Reggie*, No. 13-111, 2014 WL 4418548, at *2—*3  (M.D. La. Sept. 8, 2014).

Lastly, as referenced above, *Beechum* also commented with approval on how the district "court was careful to allay, as much as limiting instructions can, the undue prejudice engendered by" the 404(b) evidence by giving "extensive instructions to the jury on the limited use of extensive offense evidence employed to prove unlawful intent." 582 F.2d at 917.  The *Beechum* court specifically noted:

> The Advisory Committee Notes to rule 403 require the judge to consider the effectiveness of a limiting instruction in reducing the prejudicial impact of evidence. "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." 28 U.S.C.A. Rules of Evidence at 102-03 (1977). See also Fed. R. Evid. 105. This is a context in which limiting instructions are of substantial efficacy, United States v. Evans, 572 F.2d 455, 484-85 (5th Cir. 1978), and we think the judge adequately admonished the jury to consider the credit card evidence solely on the issue of [defendant's] intent.

*Id.* at 917 n. 23.

### C. Analysis

The Court finds that the Government prevails on this issue.  As to the first prong of the *Beechum* analysis, knowledge and intent are elements of the charged crime; again, the pattern jury instructions state: "The government must prove beyond a reasonable doubt that the defendant knew he had to register and that he intentionally did not do so . . ." Fifth Circuit Pattern Jury Instructions (Criminal) § 2.83 (2015).  Evidence that the Defendant was previously convicted of failure to register and that he knew about the registration requirements is highly relevant to the issues of this case.  Further, as the Government argues, the California crime and

7

the federal charged crime appear to have similar intent requirements (or, at the very least, evidence of the California crime (willful violation) would tend to prove the federal crime (mere knowledge)). Thus, the first *Beechum* element is satisfied.

The second *Beechum* element is satisfied as well. While there is a risk that the jury would convict the Defendant on an improper basis (*e.g.*, the fact that he has previously committed the same crime), the probative value of the Government's evidence (which is high) is not substantially outweighed by the danger of this unfair prejudice. The crime of failure to register as a sex offender is not so inherently prejudicial that the Defendant would suffer unfair prejudice as a result of the jury knowing he had previously committed it. Looking at the factors considered by this Court in *Reggie*, here: (1) the Defendant was actually convicted of failure to register, (2) the two offenses are similar, and (3) the conviction happened relatively recently (less than 5 years ago). All of these mitigate against excluding the evidence. Last, and most importantly, the Court can and will give the pattern Fifth Circuit charge on 404(b) evidence at trial to limit any prejudicial effect the Defendant may suffer. *See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.30 (2015). The Court will consider any other limiting instructions offered by the Government and Defendant.

The Court is also persuaded by the cases cited by the Government. In *United States v. Minor*, 498 F. App'x 278 (4th Cir. 2012) (unpublished), the defendant was convicted of failure to register as a sex offender, and the district court allowed evidence of prior convictions for failure to register under Maryland law. *Id.* at 279—80. Though the defendant argued that the convictions were "remote in time and involved a different statute with different elements," the Fourth Circuit found that the evidence was "relevant to establish 'truth as to a disputed issue,' [(citation omitted),] by making less probable [defendant's] attempted defense that he was

unaware of the registration requirements." *Id.* at 280. Further, though defendant was convicted under state rather than federal law, "the differing language in the statutes did not limit the otherwise striking similarity between these prior acts and the charged crime. Specifically, both involved [defendant's] knowing failure to register as a sex offender." *Id.* The repeated violations also tended to show that the "failure to comply would be knowing." *Id.* at 280—81. The Fourth Circuit found the evidence necessary to the Government's case given the Defendant's testimony that he did not know about the registration requirements. *Id.* at 281. Thus, the district court did not abuse its discretion in admitting the evidence. *Id.*

Similarly, in *United States v. Harper*, 502 F. App'x 447 (6th Cir. 2012) (unpublished), the defendant was also convicted of failure to register as a sex offender. On appeal, the Defendant argued that the district court improperly admitted Rule 404(b) evidence "through testimony by a deputy sheriff from North Carolina that while [defendant] had resided in North Carolina, and before moving to Cincinnati, he had been notified that he was required to update his registration but did not comply." *Id.* at 451. The appellate court found neither plain error nor an abuse of discretion:

> Because [defendant's] defense was that he had not *knowingly* failed to register under SORNA, evidence that he was repeatedly advised of his obligation under the Act was highly relevant. Moreover, the jury was instructed that it could not convict [defendant] for failure to register before moving to Ohio and should consider the evidence in question only for the purpose of determining that he acted knowingly in failing to update his registration in Ohio, rather than by accident or mistake.

*Id.* (emphasis in original).

*Minor* and *Harper* are highly persuasive and virtually indistinguishable. Moreover, the Defendant has offered no case law of his own in which such evidence was not admissible. Thus, these cases are strong authority for the Government.

9

Defendant cites only to *United States v. Goodwin*, 492 F.2d 1141 (5th Cir. 1974) for the proposition that the reason behind Rule 404(b) is:

> an accused's guilt or innocence as to a particular crime should be determined solely on the basis of evidence relevant to that crime; a jury should not be permitted to convict an accused because it believes him to be a person of bad character or because of a notion that, since he committed some other similar crime, he must also have committed the crime for which he is on trial.

*Id.* at 1148. Though *Goodwin* has favorable language for the Defendant throughout the opinion, the case is ultimately distinguishable; there, the Fifth Circuit found that district court erred in admitting such evidence because the issue of intent "was never seriously disputed at trial" and because "[p]roof of the commission of the act carried with it the evident implication of a criminal intent," eliminating the need for other acts evidence. *Id.* at 1152. This situation is completely different, as intent is disputed and not self-evident.

In sum, the Government has clearly satisfied the first element of the *Beechum* test, as its evidence is highly relevant to the issue of intent, knowledge, and absence of mistake. As to the second part of the *Beechum* analysis, the Defendant has not shown that the evidence is inadmissible under Rule 403; its probative value is not substantially outweighed by the danger of unfair prejudice or confusion, particularly in light of the limiting instruction the Court will give at trial. Accordingly, the Court will deny the Defendant's motion and allow the evidence.

### III. Government's Motion in Limine to Preclude Defendant From Referring to Post-Indictment Sex Offender Registration During Trial (Doc. 30)

#### A. The Parties' Arguments

The Government argues that evidence of the Defendant's post-indictment registration is irrelevant to the Defendant's knowledge and intent at the time he committed the crime. To the extent it is relevant, it should be excluded under Rule 403; it is unfairly prejudicial in that it could lead the jury to decide on an improper basis. For instance, the jury may think that the

10

Defendant should not be prosecuted when the problem has already been corrected. This could lead to jury nullification. The Government cites to a number of tax fraud cases holding that evidence of corrective action is inadmissible to prove willfulness at the time of the offense.

The Defendant has two main arguments. First, the tax fraud cases are distinguishable and do not establish an absolute bar to this evidence; rather, the Court has to consider the facts and circumstances of each individual case. Second, the Defendant has asserted an affirmative defense here, and one of the elements of that affirmative defense is later registration as a sex offender. Under either theory, this evidence should be admitted.

### B. Analysis

Both sides present strong arguments on this issue. On the one hand, the Defendant is correct that many cases recognize that there is no absolute bar to allowing evidence of post-indictment conduct. "The district court has considerable discretion in admitting evidence of acts of subsequent conduct of a defendant offered to prove the absence of evil intent." *United States v. Radtke*, 415 F.3d 826, 840 (8th Cir. 2005) (quoting *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir.1985)). "Whether evidence of a defendant's subsequent mental state, as demonstrated by a subsequent act, is 'of any probative value in establishing his state of mind at the time of the alleged criminal acts' must be determined by the circumstances of the individual case." *Radtke*, 415 F.3d at 840 (quoting *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952)). "District judges making relevancy determinations in this type of situation [(i.e., evidence of corrective actions)] should proceed on a case-by-case basis." *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014) (citing *United States v. Tishberg*, 854 F.2d 1070, 1073 (7th Cir. 1988) (reasoning, in the sufficiency context, that the defendant's amended return "may demonstrate a good faith effort to correct his previous mistakes," but also noting that the return

11

"does not negate the import of his previous action")). As the D.C. Circuit stated (though quite a while ago):

> Acts occurring subsequent to a supposed criminal offense may in particular circumstances constitute admissible evidence bearing on innocence. By the same token, an event superficially indicative of bad faith conceivably may be shown by a later transpiration to have actually involved a completely wholesome state of mind. On the other hand, an ever-present reason demanding latitude for the ruling on admissibility is that what takes place, particularly after the fact, is 'often feigned and artificial. While the judge's function does not extend to a flat decision as to whether it is or not, it is his responsibility to calculate and weigh the propensities of the proffered evidence in both directions in determining whether it has a 'plus value' favoring its admission.

*Post v. United States*, 407 F.2d 319, 324–25 (D.C. Cir. 1968) (footnotes omitted). Finally, the Third Circuit has stated (even longer ago):

> In cases of prosecution for crimes involving fraudulent intent, some courts have displayed increased liberality in admitting evidence of subsequent statements and conduct of defendant. See Heindel v. United States, 6 Cir., 1945, 150 F.2d 493, 497; United States v. Matot, 2 Cir., 1944, 146 F.2d 197, 198; United States v. Wicoff, 7 Cir., 1951, 187 F.2d 886, 890-891. The underlying philosophy prompting this policy is well expressed by the Second Circuit In United States v. Matot, supra, where the court declared that so long as evidence does not confuse the jury, its exclusion merely because of logical remoteness from the issue is always a hazard and is usually undesirable. We agree with this principle. Such a rule of liberality does not, however, render admissible every subsequent mental state (which evidence is supplied by the subsequent act) of any probative value in establishing his state of mind at the time of the alleged criminal acts, and if so, does the evidence not unduly entangle the issues or confuse the jury?

*Stoehr*, 196 F.2d at 282.

However, even more cases addressing this issue have found that evidence of actions taken after misconduct occurred was not admissible to prove intent at the time of the misconduct. *See United States v. Wade*, 203 F. App'x 920, 929 (10th Cir. 2006) (unpublished) ("we fail to see how the attempts to settle the tax debt after the charged offenses are relevant to his conduct beforehand."); *Radtke*, 415 F.3d at 840–41 ("Whether an amended tax return filed post-

12

indictment technically might be 'relevant' to the taxpayer's intent at the time he filed the original return, there is no doubt that self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime. . . . Given that there was little, if any, probative value in [Defendant's] amended filing, . . . the district court did not abuse its discretion in ruling that any minimal probative value was substantially outweighed by danger of confusing the issues and misleading the jury."); *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) ("The district court correctly ruled that evidence of belated tax payments, made while awaiting prosecution, is irrelevant. [(citations omitted)] Were the rule otherwise, tax evaders could avoid criminal prosecution simply by paying up after being caught."); *United States v. Yoon*, 128 F.3d 515, 524–25 (7th Cir. 1997) ("Mrs. Yoon points out that after the fraud was discovered, she and her husband made full restitution to two of the banks and signed a note and pledged collateral to secure their debt to the third bank. . . . Mrs. Yoon's conduct after the fraud was completed is irrelevant to the issue of whether the evidence was sufficient to show that she knowingly participated in the fraud during its existence, and we do not consider it for such a purpose."); *United States v. McClain*, 934 F.2d 822, 834–35 (7th Cir. 1991) ("The district court ruled in limine that the 1985 return was not probative of McClain's state of mind at the time he filed his 1984 tax return, given the indictment filed against him in the intervening year. We see no reason to upset this ruling."); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) ("The conduct of defendant in the years subsequent to 1972, 1973 and 1974 was not relevant to the charge that defendant had wilfully failed to file tax returns in those three years." (citing *Sansone v. United States*, 380 U.S. 343, 354, 85 S. Ct. 1004, 1011, 13 L. Ed.2 d 882 (1965) ("(T)he intent to report .

. . . income and pay . . . tax in the future does not vitiate the wilfulness required by (26 U.S.C. s 7203)"))); *Post*, 407 F.2d at 324–26.

Nevertheless, the Court finds that, under the circumstances of this case, the Court should allow evidence of the Defendant's post-indictment registration. The Court bases this decision on two grounds.

First, the Court finds persuasive *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014). There, the district court ruled in a tax fraud case that "evidence of [the defendant's] conduct after federal agents approached him—namely, his amended tax return and payments to reimburse his campaign committees . . . would be admissible *if* [the defendant] could establish that each remedial action was relevant to his state of mind at the time he filed the original tax returns." *Id.* at 1049—50. The defendant did not testify and did not provide the requisite evidentiary foundation, so evidence of the remedial actions was not shown at trial. In affirming, the appellate court explained:

> District judges making relevancy determinations in this type of situation should proceed on a case-by-case basis. *Cf. United States v. Tishberg,* 854 F.2d 1070, 1073 (7th Cir. 1988) (reasoning, in the sufficiency context, that the defendant's amended return "may demonstrate a good faith effort to correct his previous mistakes," but also noting that the return "does not negate the import of his previous action"). Nevertheless, courts have repeatedly affirmed the exclusion of evidence of remedial action taken after the taxpayer knows he is under investigation. *See United States v. McClain,* 934 F.2d 822, 834–35 (7th Cir. 1991) (finding "no reason" to disturb the district court's ruling that defendant's 1985 tax return was not probative of his state of mind at the time he filed his 1984 return, given his indictment in the intervening year); *United States v. Radtke,* 415 F.3d 826, 840–41 (8th Cir. 2005); *United States v. Ross,* 626 F.2d 77, 81 (9th Cir.1980); *Post v. United States,* 407 F.2d 319, 325 (D.C. Cir. 1968); *United States v. Stoehr,* 196 F.2d 276, 282 (3d Cir. 1952); *see also United States v. Philpot,* 733 F.3d 734, 748 (7th Cir. 2013) (explaining, in political corruption case, that defendant's remedial "actions after his bonuses were reported in the press shed little or no light on his state of mind two years earlier" when he received those bonuses). A common thread in many of these cases is that subsequent remedial actions may not be probative of the defendant's prior state of

14

>mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution. Cf. Fed. R. Evid. 407 (barring evidence of subsequent remedial action to prove an admission of fault).
>
>In any event, the district court did not exclude the evidence entirely—it simply conditioned the evidence's admission on some kind of showing of its relevance to Beavers' state of mind at the time he filed his original returns several years earlier. Beavers did not make this showing. In fact, his theory of defense is at odds with his argument that the remedial evidence was relevant. Beavers' argument in defense (which he maintains on appeal) was that all of the transfers from his campaign committees were loans, not income. Thus, evidence that Beavers declared some of the campaign-fund transfers as income on his amended tax returns *after* he was under investigation has little bearing on whether he considered the transfers to be loans at the time he took the funds. In sum, the district court's sensible approach to the remedial evidence was within its discretion.

*Id.* at 1050–51.

The Court agrees that this approach is sensible. The Defendant here will be allowed to introduce evidence of post-indictment registration "*if* [he can] establish that [such] remedial action was relevant to his state of mind at the time he" originally failed to register. Though the defendant in *Beavers* failed to make a sufficient showing, this Court notes that, here, the Defendant has appeared to do so, as his defense will be that he did not understand the requirements, and, as soon as he did, he corrected the problem. Thus, once Defendant lays the foundation for this evidence, it will be admissible.

Second, even assuming that *Beavers* did not apply for the Defendant, he has unquestionably shown that this evidence is relevant to an affirmative defense to the crime at issue. Again, 18 U.S.C. § 2250(c) provides:

>In a prosecution for a violation under subsection (a) or (b), it is an affirmative defense that—
>
>>(1) uncontrollable circumstances prevented the individual from complying;

15

(2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and

(3) the individual complied as soon as such circumstances ceased to exist.

Under the plain language of this statute, the Defendant can present evidence that he complied with the requirements of SORNA "as soon as [the uncontrollable] circumstances ceased to exist," even if such circumstances ceased after the Indictment was filed.

The Court agrees with the Defendant; regardless of the merit of this affirmative defense, the Defendant has a right to present it at trial, and, assuming a foundation is laid, the merits of the defense should ultimately be decided by the jury. For these reasons, the Government's motion is denied.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion in Limine to Exclude Other Crimes, Statements, Wrongs, or Bad Acts* (Doc. 25) filed by Defendant Khum Son, also known as Son Khum, is **DENIED**; and

**IT IS FURTHER ORDERED** that the *Motion in Limine to Preclude Defendant from Referring to Post-Indictment Sex Offender Registration During Trial* (Doc. 30) filed by the Government is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>February 3, 2017</u>.

 

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**